F. D. CUMMINS, defendant in fi. fa. and claimant, as trustee of his wife, plaintiff in error, vs. BOSTON & GUNBY, defendants in error.

[1.] Constructive notice of an unrecorded marriage settlement is sufficient to bind a *bona fide* purchaser, a *bona fide* creditor, or a *bona fide* surety, under the Act of 1847 requiring marriage settlements to be recorded.

[2.] Such notice as would excite apprehension in ordinary minds and prompt enquiry, is constructive notice,

[3.] A factor who has given or extended credit to a customer on the credit of shipments made to him, and property in his possession supposed to be his, and he subsequently received notice that the property, or a considerable part of it, is not his, which he finds to be true on enquiry, and his customer insolvent or probably so, without the property ascertained not to be his, may proceed at once, upon his own judgment, to take the usual steps for his own security.

Claim, from Spalding county. Tried before Judge CABINESS, at November Term, 1857.

Two *fi. fas.* in favor of Boston & Gunby, against Francis

D. Cummins, were levied upon seven negroes. as the property of defendant.

A claim was interposed by the defendant himself, as the trustee of his wife, Valinda Cummins; alleging that said slaves belonged to said Valinda, under and by virtue of a marriage agreement, executed by and between them, prior to and in contemplation of their marriage.

The *fi. fas.* both bore date 9th December, 1852, one for the sum of $1,039 50, besides interest, and the other for $2,000, besides interest, and were issued upon judgments confessed by the defendant.

The marriage agreement was dated 16th February, 1833, and recorded 26th June, 1852.

It was in proof that the debts or demands which were the foundation of these judgments, originated in acceptances of drafts by plaintiffs, drawn by defendant, upon cotton consigned by him to them, and the amount of which exceeded the proceeds of the cotton, which, when sold, was applied to said drafts.

There was also proof that plaintiffs received notice of the marriage agreement about the 21st or 22d March, 1851, from a person who told one of the plaintiffs that he had heard that there was a marriage contract between defendant and his wife, and that his negroes were settled on her.

It further appeared, that in 1851, defendant consigned to plaintiffs one hundred and eight bales of cotton, against which he drew a draft upon them for $6,088 04, at forty-five days, which was accepted; draft was dated 30th January, 1851. The cotton not being sold before the maturity of this draft, a second draft was drawn in renewal, at forty-five days, dated 17th March, 1851.

The testimony is very voluminous, and as the exceptions all grow exclusively out of the charge of the Court, and its refusal to charge as requested by claimant, it is sufficient to a proper understanding of this case, simply to set out said charge.

The Court charged the jury as follows:

"In this case, two *fi. fas.* in favor of Boston & Gunby vs. F. D. Cummins, have been levied on certain negroes as the property of defendant. A claim has been interposed by him, as trustee of his wife, Valinda Cummins. He alleges, that the negroes levied on are the separate property of his wife, for whom he is trustee. This levy and claim constitutes the issue for you to try, and the question for you to decide is: Is the property levied on subject to the *fi. fas.* of the plaintiffs? It is incumbent on the plaintiffs in *fi. fas.* to show possession in the defendant at the time of the levy, or that the property in the negroes was in him at or after rendition of the judgments.

If plaintiffs have proved possession in defendant at the time of the levy, that is *prima facie* evidence that the negroes levied on are his property, and the burden of showing that they are not subject to the *fi. fas.*, is on the claimant.

You will look to the testimony to satisfy yourselves whether they were in possession of the defendant at the time of the levy, and if they were, that is sufficient to authorize you to find them subject to the *fi. fas.* unless the claimant has rebutted that testimony and shown that they are not subject.

To rebut this presumption, the claimant introduced a marriage agreement, entered into between himself, and his wife, and her trustee, before the solemnization of their marriage, by which it was agreed that the property mentioned in said agreement should be held by the trustee of his wife, for her sole use and benefit, free from any liability of his then or future indebtedness. And the validity of this instrument, or rather, notice to the plaintiffs before they gave credit to the defendant, is the point upon which this case turns.

If it was recorded in the proper office, within the time prescribed by the statute, that is sufficient notice to all persons of its existence, and creditors without any other notice are bound by it. If it was not recorded within the time prescribed by law, then it is void as to creditors who had no other notice of it at the time the credit was given.

By the statute in such cases made and provided, all marriage agreements or settlements in existence at the time of its enactment, were required to be recorded within 12 months, and such as might thereafter be executed, within 3 months from the date of their execution; and if any such instrument be not recorded within the time prescribed, the same is of no force or effect against *bona fide* purchasers without notice, or *bona fide* creditors without notice, who might purchase, or give credit, or become security, before the actual recording of the same.

If the instrument in question was not recorded within the the time prescribed by law, and if the defendant in *fi. fas.* was in possession of the negroes in controversy, and credit was given to him by plaintiffs, without notice of the existence of the marriage agreement, the instrument is void and of no effect as to them. But if they had notice of the existence of the instrument at or before the time the credit was given to defendant, they are bound by it, and the property specified in the marriage agreement is not subject to this debt. As to what constitutes notice: When an instrument, such as is now before you, is recorded in the proper office, within the time prescribed by law, that is notice sufficient to purchasers, creditors and securities. If the instrument be not recorded within the time prescribed, then actual notice must be given to purchasers, creditors and securities, to bind them, and rumor, report or hearsay is not notice; the notice must be given by some one authorized to speak; by some one who has actual personal knowledge of the existence of the instrument, and such knowledge to be communicated to creditors before the credit is given, and if it is communicated after credit is given, it is insufficient to bind them.

If the plaintiffs, after giving credit to defendant, were notified of the existence of the marriage agreement, and if they were fully apprised of the insolvency of the defendant, not by rumor, but by one who could give reliable information of the fact; if, after receiving such notice, they extended the credit

Cummins vs. Boston & Gunby.

originally given to defendant, and at the same time had effects of defendant in their hands of sufficient value to indemnify themselves against loss, and neglected to do so, then the plaintiffs, upon such extension of credit, and under such circumstances, have no more right to make their money out of the property mentioned in the marriage agreement, than they would have had, if they had been charged with notice in the first instance. But to have been authorized to sell and appropriate the proceeds of the cotton belonging to defendant, to indemnify themselves for advances made or liabilities incurred, they must not only have had notice that the property in his possession was claimed by him, as trustee for his wife, under their marriage agreement, but they must also have been fully assured of his insolvency. As factors, they were bound by the instructions of their principal, and the contract between them.

They had no right to sell without his authority, except to reimburse themselves for advances made or liabilities incurred for him, and then only upon sufficient notice to him, and demand for reimbursement, and upon neglect or refusal on his part to reimburse them within a reasonable time after the maturity of the contract. If the defendant was notoriously insolvent, and knowledge of the fact was brought home to them, they could then, and only then, have sold to reimburse, without notice to him.

You must be fully satisfied of the existence of all these facts, and the proof must be such as to satisfy the minds of reasonable men, before you can hold the plaintiffs affected with such notice as to discharge the property which has been claimed. You will apply the law, as it is given to you by the Court, to the facts in this case; of the facts, you are the exclusive judges. It is your province to determine what facts have been proved, and then apply the law. If the marriage agreement between defendant in *fi. fas.* and his wife, was not recorded within the time prescribed by the statute, the plaintiffs, as his creditors, are not bound by it, unless they

had actual notice of its existence before credit was given, and this notice must have been given by some one who, from his own personal knowledge, could communicate the fact. If the plaintiffs had such notice, you will find the property not subject; if they had no such notice, you will find it subject.

Claimant's counsel requested the Court to charge the jury, that when husband and wife live together in the enjoyment of personal property, and the wife has the equitable title, the possession is to be considered as subordinate to her title, and his possessions, hers; which the Court refuses to give, but charges the jury, that the legal title is in the trustee, and the possession accompanies the legal, and not the equitable title.

Claimant's counsel also requested the Court to charge the jury, that the Act of 30th December, 1847, which makes unrecorded deeds void as to creditors, means creditors of the grantors; which charge the Court refused to give."

To which charge and refusals to charge claimant excepted.

The jury found the property subject to the *fi. fas.* Whereupon, counsel for claimant tender their bill of exceptions, and allege as error the charge and refusals to charge above excepted to, and the finding of the jury.

GREEN; and MARTIN, for plaintiff in error.

ALFORD; and FLOYD, *contra.*

*By the Court*—McDONALD, J. delivering the opinion.

In discussing the charge given to the jury by the presiding Judge in the Court below, we must examine the Act requiring marriage settlements to be recorded, in order to determine the kind of notice contemplated by that Act to bind *bona fide* purchasers, creditors and sureties. Ante-nuptial marriage settlements are made upon valuable considerations and prior to the Act of the Legislature of 1847, there was no Act requiring them to be recorded. They were good con-

Cummins vs. Boston & Gunby.

veyances, for valuable consideration, and, when free from fraud between the parties, bound every body. In this State, all the property of the *feme* on marriage vests in the husband. The possession of the property by the husband after marriage, is the *indicium* of property in him, and, without explanation, it is presumptively his absolutely. But this presumption was held not to affect the rights of the wife as she ceased to be *sui juris* on her marriage, and became incapable of performing a legal act or of procuring for herself legal protection, and purchasers, creditors and sureties, were subjected to great injuries, by ignorantly supposing the property to be the husband's. To remedy this evil, that Act was passed, and it is a matter of much importance, to settle the kind of notice which satisfies the statute, whether it be actual or constructive. We think there can be but little doubt on that point. The legal ability of the wife to act for herself continues to be the same since the enactment of that statute, that it was before. She cannot control her trustee, of herself, in the execution of the duties he undertook to perform by the acceptance of the trust, and if, as in this case, the law, by the death of the trustee, vests an insolvent and, therefore, irresponsible husband with the trust, under whose legal dominion the wife is, she is powerless in contemplation of law as to her legal rights. Her condition, then, requires, that in construing the statute, we should not extend it against her beyond its letter.

[1.] We shall proceed then to a brief analysis of the Act. The two first sections require that marriage settlements shall be recorded. The third section declares the consequence of a failure to record. A settlement not recorded shall not be of any force or effect against a *bona fide* purchaser without notice, a *bona fide* creditor without notice, or a *bona fide* surety without notice, who may purchase, give credit, or become surety before the actual recording of the same. It is manifest, that if the settlement be recorded, the registry would be sufficient notice and all that the statute requires. It cannot

be questioned, but that the registry would be constructive notice only. It is certainly not actual notice. It is just to say then, that the kind of notice meant by the statute, is that which is equal to a registry—a constructive notice.

[2.] Our conclusion is, that any notice is sufficient, or in other words, amounts to constructive notice, which would excite apprehension in ordinary minds, and prompt enquiry into the actual condition of things; and that information for such purpose may be communicated by a person, whether he have personal knowledge of the fact, or be specially authorized to speak or not, provided it be given by such a man and in such terms as would induce a person of ordinary prudence to enquire into the matter, we think that the Court ought so to have instructed the jury, and that the charge that the law required actual notice was too strong. The Legislature intended to protect the description of persons mentioned in the statute, from imposition and injury, and not to arm them with power to commit a fraud.

Wm. W. Chapman testified that Mr. Boston spoke to him of his acceptances on drafts of plaintiff in error drawn on cotton and that, he informed him that Cummins had no property except a house and lot, and that he had heard that his negroes were settled on his wife. It is true that he said he knew it only from hearsay, but it did put him on enquiry, for he enquired immediately of Chapman, the value of the house and lot, and on being informed that it was worth about $800, replied that he thought he was good—that he was holding about 110 bales of cotton for him.

We think that the charge of the Court in regard to the right of the consignee to dispose of the produce in their hands for their indemnity, and of their duty to do it, should be modified to suit the views expressed by us in respect to the notice required by law, with a slight change in regard to the substance. We think that the consignees ought, if the notice received by them was such as would have induced a man of ordinary prudence, to have enquired into the matter, to have

Cummins vs. Boston & Gunby.

sought information of the wife, within a reasonable time, in relation to the trust; and of any one probably knowing the circumstances of the consignor, as to his solvency, and if the enquiry resulted in information that the property was secured in trust to the wife, or if there was a part not so secured, and they were satisfied of the insufficiency of the part not secured to protect them, they might proceed at once to dispose of the effects in hand for their own security, whether the credit had been extended or not, unless the credit had been extended with a knowledge of all the facts; or *independent of any consideration of security afforded by the property.*

In that case they should act on their own judgment, as they would on their own responsibility so far as their right to claim indemnity for a balance, from the trust property, is concerned.

Agreeing mainly with the Court below on other points insisted on in argument by plaintiff in error, we simply say that we reverse the judgment on the points above examined.

Judgment reversed.